

**SIGNED this 29th day of March, 2023**

_Shelley D. Rucker_
Shelley D. Rucker
CHIEF UNITED STATES BANKRUPTCY JUDGE

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF TENNESSEE
### SOUTHERN DIVISION

In re:

George Aaron Judzewitsch,
    Debtor.

No. 1:22-bk-11482-SDR

Chapter 7

Keveena Bailey,
    Plaintiff,

v.

Adv. No. 1:22-ap-01021-SDR

George Aaron Judzewitsch,
    Defendant.

### <u>MEMORANDUM OPINION</u>

## I.    INTRODUCTION

When plaintiff Keveena Bailey divorced from defendant George Judzewitsch—who is the debtor in the main bankruptcy case here—they divided marital property. Defendant was awarded a Ford Explorer for which the parties had cosigned a loan, and he agreed to hold plaintiff harmless if he stopped paying on the car loan and the lender sought to enforce the debt against her.

Defendant later defaulted.  The lender sued both parties; defendant was dismissed without prejudice; but plaintiff entered an agreed judgment with the lender.  Plaintiff later defaulted, and the lender garnished her bank account to pay off the loan.  Defendant filed for bankruptcy, and plaintiff commenced this adversary proceeding to obtain a declaration that defendant's indemnification obligation is not dischargeable under 11 U.S.C. §§ 523(a)(5) and (a)(15).

Pending before the Court is a motion by plaintiff for summary judgment under Civil Rule 56, made applicable by Bankruptcy Rule 7056.  (Doc. No. 18.)  In short, plaintiff argues that the final divorce judgment transferred the Explorer to defendant and created an unconditional promise of indemnification from defendant to plaintiff.  That indemnification, according to plaintiff, satisfies the criteria of Sections 523(a)(5) and (a)(15).  Defendant does not contest that 1) both parties were obligated under the note for the Explorer loan; 2) the divorce court awarded him the vehicle that secured the note; 3) he was obligated to pay for the Explorer, and he agreed to hold plaintiff harmless if he did not pay the cosigned debt; 4) he failed to do so; and 5) the lender pursued plaintiff for payment.  Instead, defendant raises what the Court can best describe as a defense to an indemnification claim.  Defendant asserts, without documentation to back him up, that plaintiff was under no obligation to pay off the Explorer loan and should have challenged the lender's litigation as he did.  Plaintiff's failure to challenge the lender's claim and decision to enter an agreed judgment, in defendant's view, constitutes a voluntary payment that is not subject to indemnification under the final divorce judgment.

The Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334.  This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (I), and the parties have consented to entry of final orders and judgment.  Defendant, as the debtor in the main case,

also submitted to the jurisdiction of this Court by voluntarily filing his petition.  A determination

of the dischargeable nature of a debt unquestionably is within the jurisdiction of this Court.  The

record is sufficiently complete that the Court does not see the benefit of oral argument.  For the

reasons below, the Court will grant plaintiff's motion in part under Section 523(a)(15) and will

abstain from a calculation of the amount of the claim or a determination regarding contempt.  When

defendant filed his petition, the state court that granted the final divorce judgment had proceedings

pending related to enforcement of plaintiff's indemnification rights and contempt of the judgment

and the marital dissolution agreement ("MDA") incorporated into it.  The issues related to

indemnification and contempt are squarely within the jurisdiction of the state court, involve

Tennessee state law, and are related to prepetition proceedings.  Abstention will allow the parties

to address those issues without the involvement of a Bankruptcy Court.

## II.    BACKGROUND

### A. *Divorce and Other Proceedings in State Court*

This adversary proceeding concerns allegations of unresolved obligations following the

parties' divorce.  The parties married on August 6, 2005, and obtained a final judgment for divorce

on May 1, 2017.  (Doc. No. 14-1 at 1, 4.)  The final judgment for divorce, in turn, incorporated an

MDA that the parties negotiated to divide their marital property.  (*See id.* at 5 (inclusion of a recital

paragraph that "the parties have each contributed to the creation of their marital estate and, in

recognition of their contributions, intend by this Agreement to accomplish an equitable division of

their marital property").)  The MDA awarded a jointly owned Ford Explorer to defendant.  (*Id.* at

6.)  The Explorer was collateral securing a note that the parties cosigned to obtain a loan from

ORNL Federal Credit Union to buy the vehicle.  The note and security agreement are not part of

the record, but the parties do not dispute that they cosigned the loan, obtained the Explorer, and

were jointly and severally liable for payment of the note at the time of the creation of the MDA.

Because defendant received the Explorer in the property division, he agreed in Paragraph 5 of the

MDA to "be responsible for the debt on his vehicle" and to "indemnify and hold [plaintiff]

harmless thereon." (*Id.*)  The MDA also contained an explicit provision in Paragraph 6 that "[n]o

alimony shall flow to either party." (*Id.*)  Additionally, the MDA contained an enforcement

provision in Paragraph 18 through which the parties agreed "that any costs including, but not

limited to, counsel fees, court costs, investigation fees, and travel expenses incurred by a party in

the successful enforcement of any of the agreements, covenants, or provisions of this Agreement

shall be borne by the other party." (*Id.* at 9.)[1]

Problems arose after the divorce became final when defendant stopped making payments

on the Explorer loan.  Plaintiff did not plead details about timing, but at some point after the

default, the lender repossessed the Explorer and sold it.  The sale left a deficiency of approximately

$16,000.

After the sale of the Explorer, the lender sought to collect the deficiency in state court.  On

March 7, 2018, the lender sued both plaintiff and defendant under Docket Number 108775H in

Knox County Sessions Court.  (Doc. No. 22-1 at 9.)  The lender sought a deficiency balance of

$19,241.74 plus interest, late charges, and attorney fees and costs.   (*Id.*)  A hearing occurred on

June 6, 2018, at which the state court dismissed the case as to defendant only and without prejudice.

(*Id.*)  Why the dismissal occurred is not stated on the face of the state court judgment.[2]  On June

---

[1] The parties also agreed in Paragraph 11 of the MDA that each obligation that they had to pay a debt or to indemnify the other party would be nondischargeable under the Bankruptcy Code. (*Id.* at 7.)  The parties cannot stipulate in state court to the legal status of any debts under the Bankruptcy Code.  The legal status of any debts, for bankruptcy purposes, will have to be determined here under federal law.  *See Calhoun v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1107 (6th Cir. 1983) (citations omitted).

[2] The record contains the first page of what appears to be a motion that defendant filed in Knox County

4

8, 2018, the lender served plaintiff by hand delivery with a new civil warrant under the same docket number in the same state court.  (*Id.* at 11.)  The lender again sued for a deficiency balance of $19,241.74 plus interest, late charges, and attorney fees and costs.  (*Id.*)  A hearing occurred on August 22, 2018, at which the state court entered a judgment against plaintiff for $16,612.30 plus interest at 7%.  (*Id.*)  The judgment was designated as "agreed."  (*Id.*)  The judgment also contains a note that reads, "See payment terms per separate Agreed Judgment" (*id.*), but the payment terms were not included in the record of this adversary proceeding.

The parties diverge on the impact of the agreed judgment against plaintiff on the issues in this adversary proceeding.  Plaintiff states only that she "was sued by ORNL for the deficiency because she was a signatory on the note, and she made arrangement with the lawyers representing ORNL to make monthly payments on the judgment, and the judgment against her was in the amount of $16,612.30 plus 7% interest, and costs." (Doc. No. 20 at 2.)  Defendant, in contrast, asserts that "plaintiff []or her attorney did not show up for court thus consenting to a default judgement." (Doc. No. 22 at 5.)  This default judgment is not reflected in the June 8, 2018 judgment.  The August 22, 2018 agreed judgment makes reference to agreed terms that are not part of the undisputed facts.

After entry of the agreed judgment, the lender had to resort to execution to collect.  Plaintiff asserts—and defendant does not contest in his objection (Doc. No. 22-1 at 15–17)—that she no

---

Sessions Court to dismiss the case.  (Doc. No. 22-1 at 2.)  In this first page, defendant cited federal civil rules about jurisdiction and made an assertion that he and the lender "agreed to a Zero balance on the account." (*Id.; see also* Doc. No. 22 at 5 (defendant's reference to reaching a settlement with the lender).)  Defendant has not placed this page in any context, including the other pages of the motion and any documentation that would confirm whether the state court adopted his reasoning or acted on the motion at all.  This Court cannot rule out, without more proof, that the dismissal of defendant without prejudice was a voluntary choice by the lender to drop him from the suit.

longer was able to make monthly payments on the agreed judgment when she stopped receiving child support. (Doc. No. 20 at 3.) The lender responded by executing the judgment against plaintiff's bank accounts; in addition to the garnishment of funds from her accounts, plaintiff incurred legal fees. (*Id.*)

In April 2021, plaintiff filed in state court both a petition for contempt of the final judgment of divorce and a motion to enforce the MDA. (Doc. Nos. 14-2, 14-3.) Plaintiff sought enforcement of Paragraph 5 of the MDA and its provision that defendant would pay the debt on the Explorer or would indemnify plaintiff for any costs that she incurred instead.

The petition for contempt and the motion for enforcement appear to have been pending when defendant filed for bankruptcy. On September 22, 2022, plaintiff obtained relief from the automatic stay to resume the contempt and enforcement proceedings in state court. (Main Case, Doc. No. 28.) Whether there has been any progress in state court is not clear from the materials presented with plaintiff's motion or defendant's objection.

### B. Bankruptcy Proceedings in This Court

Defendant filed his voluntary Chapter 7 petition on July 8, 2022. (Main Case, Doc. No. 1.)[3] Defendant received his discharge on November 14, 2022. (Main Case, Doc. No. 36.)

Plaintiff commenced this adversary proceeding on October 11, 2022. (Doc. No. 1.) Following one voluntary amendment (Doc. No. 6) and an order from the Court outlining procedural defects in the parties' papers (Doc. No. 12), plaintiff filed her second amended complaint on December 19, 2022 (Doc. No. 14). The second amended complaint contains three

---

[3] In Schedule E/F, defendant scheduled plaintiff as a priority unsecured creditor in the amount of $40,000.00 for a "domestic support obligation." (*Id.* at 21.) The debt is not listed as disputed. The petition did not include a description or itemization of the scheduled amount; the Court thus cannot determine whether this is a different debt than the Explorer debt.

counts.  In Count 1, plaintiff asserts that the indemnification provision of Paragraph 5 of the MDA constitutes a domestic support obligation that would be nondischargeable under 11 U.S.C. § 523(a)(5).  In Count 2, plaintiff asserts alternatively that the indemnification provision of Paragraph 5 of the MDA is a debt to a former spouse incurred during a divorce or as part of a divorce decree and thus nondischargeable under 11 U.S.C. § 523(a)(15).  In Count 3, plaintiff asserts that the reimbursement provision of Paragraph 18 of the MDA makes any resulting debt incurred by defendant nondischargeable under either Section 523(a)(5) or Section 523(a)(15).  The second amended complaint concludes with a request for a declaratory judgment that any debts or costs that defendant owes plaintiff through Paragraphs 5 or 18 of the MDA are excepted from discharge.  Plaintiff also seeks permission to resume her contempt and enforcement proceedings in state court.[4]

Plaintiff filed the pending motion for summary judgment on February 20, 2023.  Plaintiff makes two substantive arguments in favor of nondischargeability.  First, plaintiff argues that defendant entered an agreement to pay the debt on the Explorer and to provide indemnification related to the Explorer if necessary.  The agreement, memorialized in Paragraph 5 of the MDA, should be respected like any other contractual agreement.  The dismissal of defendant from the lender's state case does not, in plaintiff's view, change defendant's contractual obligations:

> It does not matter that the Defendant was somehow able to avoid paying the debt to ORNL.  The issue is that the Plaintiff did have to pay it, and the Defendant, under the terms of the MDA, is to indemnify and hold her harmless.  The MDA is basically a settlement between the parties that was incorporated into and became a part of the Divorce Decree.  The same rationale applies to the second Count raised by the Plaintiff regarding the recover of attorney fees and costs in prosecuting this

---

[4] Considering that plaintiff already obtained relief from the automatic stay to resume these proceedings in state court, this Court infers that the state court might have hesitated to resume proceedings to ensure that it would not interfere with defendant's bankruptcy case.

action against the Defendant.

(Doc. No. 19 at 5–6.)  Plaintiff concludes that the indemnification provision of Paragraph 5 of the MDA and the enforcement provision of Paragraph 18 combine to satisfy the definition of a domestic support obligation under 11 U.S.C. § 101(14A), which in turn would make defendant's obligations nondischargeable under Section 523(a)(5).

Second, plaintiff argues in the alternative that defendant's obligations under the MDA would be nondischargeable under Section 523(a)(15).  Even if defendant's obligations did not qualify as a domestic support obligation, Section 523(a)(15) would make nondischargeable any new debt that divorcing parties create during divorce proceedings or in connection with a divorce decree.  Plaintiff argues that the indemnification that defendant now owes her arose from his failure to make payments on the Explorer and his promise to reimburse her when she had to pay off the car loan instead.  The indemnification thus would be a new debt created by the final divorce judgment, making Section 523(a)(15) applicable.

Defendant opposes plaintiff's motion by raising a defense to the indemnification obligation and the contempt claim rather than making a legal argument under the Bankruptcy Code.[5] Defendant does not address the nondischargeable status of any debt that he might owe to plaintiff

---

[5] Defendant's objection to plaintiff's motion is titled as an objection and concludes with a request that the objection to summary judgment be "granted."  (Doc. No. 22 at 6.)  The first page of defendant's objection, however, also includes a sentence in which defendant asks for dismissal of the complaint under Civil Rule 12(b)(6).  The Court is construing the objection only as a response to the motion for summary judgment, and not as a motion to dismiss, for three reasons.  First, Civil Rule 12(b)(6) motions are not permitted after the filing of an answer.  *McGlone v. Bell*, 681 F.3d 718, 728 n.2 (6th Cir. 2012) ("Defendants filed an untimely motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), as it was filed after Defendants' Answer."); *see also* Doc. No. 12 at 2.  Second, defendant attached to his objection documents outside the pleadings that would have required a conversion under Civil Rule 56 anyway.  Third, as will be explained below, any reasons that defendant gives for dismissal go more to the amount of any indemnification than to the legal status of any debt under the Bankruptcy Code.  The Court is abstaining from any determination of the amount of indemnification, which will allow defendant to make those arguments in state court.

through the final divorce judgment and the MDA; he instead questions the amount of any debt and

how much of it should be attributed to plaintiff's conduct.  Defendant highlights that the lender on

the Explorer loan originally sued both him and plaintiff in state court as the two cosigners of the

note.  (Doc. No. 22 at 3.)  Defendant then notes that the lender's case was dismissed as against

him and proceeded to judgment against plaintiff by agreed judgement.  (*Id.*)  If plaintiff failed to

defend herself from liability to the lender then, in defendant's view, she volunteered to fulfill her

obligation as a cosigner on the note and did not incur any costs because of the divorce in itself.

Based on his dismissal, defendant contends that plaintiff could have been dismissed also.  Without

any explanation of the legal or factual basis for his allegedly successful defense, defendant leaps

to the conclusion that plaintiff's payment was entirely voluntary.

To the limited extent that defendant does address the Bankruptcy Code, he makes an

indirect argument against a finding of nondischargeability under Section 523(a)(5).  Defendant

does not name Section 523(a)(5) explicitly but asserts that "NOWHERE in the marital Dissolution

is it stated anyway or anywhere that the marital dissolution [is] in anyway the nature of Alimony,

maintenance, or support.  It is clear that the Martial Dissolution says explicitly says NO

ALIMONY.  On page 3.  And is called EQUITABLE DISTRIBUTION on page 5." (Doc. No. 22

at 2.)

## III.    DISCUSSION

### A.       *Summary Judgment Generally*

The standard for summary judgment under Civil Rule 56 is well known.  "The court shall

grant summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "As to

materiality, the substantive law will identify which facts are material.  Only disputes over facts

that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment . . . . More important for present purposes, summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted).  "The court must read the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party." *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (citation omitted).  "In undertaking this inquiry, credibility judgments and weighing of the evidence are prohibited." *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015) (internal quotation marks and citations omitted).

Finally, the Court is mindful of defendant's *pro se* status.  Defendant should receive some leniency when the Court construes his objection and responses to plaintiff's undisputed facts, "to avoid inappropriately stringent application of formal labeling requirements." *Stradwick v. Howe*, No. CIV. 06-10020, 2007 WL 1267529, at *3 (E.D. Mich. Apr. 30, 2007) (citations omitted); *accord Harris v. Cleveland City Bd. of Educ.*, No. 1:17-CV-00121, 2018 WL 1124961, at *5 (E.D. Tenn. Mar. 1, 2018).  "However, the lenient treatment generally accorded to *pro se* litigants has limits, and *pro se* parties must follow the same rules of procedure that govern other litigants." *de Casal v. Nationstar Mortg., LLC,*, No. 3:14-2000, 2016 WL 626054, at *1 (M.D. Tenn. Feb. 17, 2016) (internal quotation marks and citations omitted).

### B. Nondischargeability Under Section 523(a)(5)

The Court now will consider whether the Explorer debt can be considered nondischargeable as a matter of law under Section 523(a)(5).  Section 523(a)(5) creates an exception to a Chapter 7 discharge "for a domestic support obligation."  11 U.S.C. § 523(a)(5).  In turn,

The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—

(A) owed to or recoverable by—(i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or (ii) a governmental unit;

(B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of— (i) a separation agreement, divorce decree, or property settlement agreement; (ii) an order of a court of record; or (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A).  The Sixth Circuit has developed

[A] four-step analysis for determining whether an obligation, which was not designated alimony or maintenance, was nonetheless actually in the nature of support and nondischargeable.  First, the obligation constitutes support only if the state court or parties intended to create a support obligation.  Second, the obligation must have the actual effect of providing necessary support.  Third, if the first two conditions are satisfied, the court must determine if the obligation is so excessive as to be unreasonable under traditional concepts of support.  Fourth, if the amount is unreasonable, the obligation is dischargeable to the extent necessary to serve the purposes of federal bankruptcy law.  The burden of demonstrating that an obligation is in the nature of support is on the non-debtor.

Fitzgerald v. Fitzgerald (In re Fitzgerald), 9 F.3d 517, 520 (6th Cir. 1993) (citing Long v. Calhoun

(In re Calhoun), 715 F.2d 1103, 1009–11 (6th Cir. 1983)).  The analysis can be fact-sensitive, with

no single fact and no single label being dispositive, and Bankruptcy Courts should give

11

considerable deference to the factual record that the state court developed:

> Specifically, the court should look to the traditional state law indicia that are consistent with a support obligation. These include, but are not necessarily limited to, (1) a label such as alimony, support, or maintenance in the decree or agreement, (2) a direct payment to the former spouse, as opposed to the assumption of a third-party debt, and (3) payments that are contingent upon such events as death, remarriage, or eligibility for Social Security benefits. An award that is designated as support by the state court and that has the above indicia of a support obligation (along with any others that the state support statute considers) should be conclusively presumed to be a support obligation by the bankruptcy court.

*Sorah v. Sorah (In re Sorah)*, 163 F.3d 397, 401 (6th Cir. 1998) (monthly payment under a divorce decree was in the nature of support, where it was labeled and structured as a maintenance obligation; where it was paid directly to the receiving spouse and not structured as assumption of a third-party debt; and where it was contingent on the earlier of the death, remarriage, or the 62nd birthday of the receiving spouse). Accordingly, an ex-wife's refinancing and payment of accelerated mortgage debt was excepted from discharge, where the ex-husband assumed the mortgage payments on the former marital residence; where he agreed to hold her harmless for any costs that she incurred; where she needed the payments to be made to support her continued living in the house; and where the obligation terminated upon death or remarriage. *In re Westerfield*, 403 B.R. 545, 555 (Bankr. E.D. Tenn. 2009). In contrast, a monthly payment that an ex-husband had to make under a divorce decree was not in the nature of support, where the payment had to be made to the ex-wife regardless of her needs and regardless of death or remarriage; the payment looked more like a property settlement than alimony or support. *Andrus v. Ajemian (In re Andrus)*, 338 B.R. 746, 754 (Bankr. E.D. Mich. 2006); *see also Hammermeister v. Hammermeister (In re Hammermeister)*, 270 B.R. 863, 874 (Bankr. S.D. Ohio 2001) ("Here, the Mortgage Obligation is a direct payment to a former spouse rather than an assumption of a third-party debt. But two of the three traditional indicia of a support obligation are not present: the Mortgage Obligation is

12

neither labeled alimony, support, or maintenance in the Divorce Decree nor contingent upon [the ex-wife's] death, remarriage, or eligibility for Social Security benefits.").

Both parties have referred the Court to the MDA as the evidence of their contract. The MDA contains explicit provisions that neither side was awarded alimony and that the parties intended a division of property. The assumption of the Explorer debt required no payments that defendant had to make directly to plaintiff, and the continuation of the payments was not contingent on death or remarriage. Applying the criteria expressed in *Sorah*, the Court cannot conclude as a matter of law that Paragraphs 5 and 18 of the MDA created a domestic support obligation. Therefore, the indemnification obligation is not excepted from discharge under Section 523(a)(5). Summary judgment thus would be inappropriate, and this portion of plaintiff's motion will have to be denied.

### C. Nondischargeability Under Section 523(a)(15)

The Court next will examine whether the Explorer debt can be considered nondischargeable as a matter of law under Section 523(a)(15). Section 523(a)(15) creates an exception to a Chapter 7 discharge for a debt "to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit." 11 U.S.C. § 523(a)(15). The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109–8, 119 Stat. 23 (Apr. 20, 2005), deleted language in Section 523(a)(15) that allowed a discharge of an otherwise nondischargeable debt if the debtor lacked the ability to pay or if a discharge would benefit the debtor more than it would hurt the former spouse. "Section 523(a)(15) now provides, unqualifiedly, that a property

13

settlement obligation encompassed by section 523(a)(15) is nondischargeable." 4 *Collier on Bankruptcy* § 523.23 (16th ed. and 2022 Supp.), *quoted in In re Ruitenberg*, 745 F.3d 647, 649 (3d Cir. 2014). Consequently, plaintiff would have the burden at trial of establishing, by a preponderance of the evidence, that "(1) the debt in question is to a spouse, former spouse or child of the debtor; (2) the debt is not a support obligation of the type described in § 523(a)(5); and (3) the obligation was incurred in a separation agreement, divorce decree or other order of a court of record." *Damschroeder v. Williams (In re Williams)*, 398 B.R. 464, 468 (Bankr. N.D. Ohio 2008). For purposes of summary judgment, plaintiff has to establish the above three elements as a matter of law.

The undisputed facts here show that plaintiff has established all three elements needed for summary judgment under Section 523(a)(15). With respect to the first element, the Explorer debt, as written in the original note, was not literally owed to plaintiff. The hold-harmless provision in Paragraph 5 of the MDA, however, created a new obligation that defendant owed directly to plaintiff and that is enforceable under ordinary contract law. *See Cheatham v. Cheatham (In re Cheatham)*, No. 08-63664, 2009 WL 2827951, at *6 (Bankr. N.D. Ohio Sept. 2, 2009) (citing *Gibson v. Gibson (In re Gibson)*, 219 B.R. 195, 202–03 (B.A.P. 6th Cir. 1998)). The second element became satisfied when the Court concluded above that any indemnification for the Explorer debt would not qualify as a domestic support obligation as defined in Sections 101(14A) and 523(a)(5) under the Sixth Circuit test. As for the third element, defendant's obligation to indemnify was created through the MDA, which became incorporated in the final divorce judgment. *Cf. Read v. Read (In re Read)*, No. 14-52035, 2015 WL 3918137, at *2 (Bankr. E.D. Tenn. June 25, 2015) ("The nondischargeability determination under (a)(15) extends not only to

14

the Defendant's obligation under the divorce decree to pay off certain marital debts, but also to the requirement that he hold the Plaintiff harmless for the same.") (citation omitted); *Hamilton v. Kyer (In re Kyer)*, No. 12-62512, 2013 WL 3877897, at *4 (Bankr. N.D. Ohio July 26, 2013) ("Under their separation agreement, Defendant became obligated to pay BFG Federal Credit Union for Plaintiff's benefit. This debt was therefore incurred in the parties' separation agreement."). All three elements thus are satisfied, and the Court will grant plaintiff's motion to the extent that any amount that defendant owes plaintiff under Paragraphs 5 or 18 of the MDA, including costs and fees, would be nondischargeable.

### D. Indemnification and Voluntary Payments

As the Court noted above, defendant's principal argument against plaintiff's motion is more defensive in nature; it refers to Section 523(a)(5) only indirectly and does not address Section 523(a)(15) at all. That is, defendant largely does not argue that a debt that arose in connection with his divorce can be discharged because Paragraphs 5 and 18 of the MDA fail to meet the legal requirements of Sections 523(a)(5) or (a)(15). Defendant argues instead that Sections 523(a)(5) and (a)(15) never come into play in the Main Case because no debt exists that requires indemnification through the MDA. Defendant challenged the lender's action in state court and was dismissed from it; without any offer of proof regarding the basis for his dismissal, he asks the Court to infer that plaintiff would have received the same dismissal if she had challenged the action. Defendant contends that plaintiff's entry into an agreed judgment means that plaintiff effectively volunteered to pay the lender. Plaintiff's voluntary payment, according to defendant, absolves him of any obligation to indemnify her under the MDA.

Whether plaintiff's agreed judgment constitutes a voluntary payment is a factual argument that goes more to the amount of any indemnification and will require additional proof of whether

15

defendant actually had a defense that plaintiff failed to assert.  The parties appear to agree that
plaintiff was a cosigner on the original note for the Explorer loan, but the note is not part of the
record for this adversary proceeding.  Defendant failed to provide even a complete copy of his
motion to dismiss in state court.  Whatever meritorious defense the facts might show, an analysis
of state contract law will be necessary.  If the state court determines that any amount is owed, it
should determine whether the nonpayment is an act of contempt. Any conclusion that the state
court reaches about the voluntary nature of plaintiff's settlement of the Explorer debt will not affect
this Court's determination, explained above, that any amount that defendant actually owes plaintiff
is nondischargeable under Section 523(a)(15).

### E.  Abstention from Calculation of Any Debt Owed

With the nondischargeability of the Explorer debt and its indemnification determined under
Section 523(a)(15), the only issue that remains between the parties is the calculation of an exact
amount that defendant might owe to plaintiff.  Plaintiff has not asked this Court to make the
calculation; she instead has asked that she "may continue with her Petition for Contempt currently
pending in the Fourth Circuit Court of Knox County."  (Doc. No. 14 at 5.)  The Court will grant
this request and will abstain from proceedings to determine any amount owed.  As long as the
entire Explorer debt is nondischargeable, "the State court in the divorce case can and should decide
what the correct amount of the debt is." *Cowan v. Ladosenszky (In re Ladosenszky)*, 617 B.R. 275,
277–78 (Bankr. E.D. Mich. 2020) (citations omitted).  In the interest of justice and out of respect
to comity with state courts and respect for state law, the Court finds that abstention under 28 U.S.C.
§ 1334(c)(1) is appropriate.  The Court accordingly reaffirms its prior order lifting the automatic
stay (Main Case, Doc. No. 28) to allow the parties to return to state court to resume any

proceedings in connection with Paragraphs 5 and 18 of the MDA that the state court might deem necessary.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court will grant plaintiff's motion for summary judgment (Doc. No. 18) in part.  Any amount that defendant owes plaintiff under Paragraphs 5 and 18 of the MDA will be nondischargeable under 11 U.S.C. § 523(a)(15).  The parties may return to state court to resume proceedings to calculate any amount owed.  The Court will deny plaintiff's motion to the extent that plaintiff sought relief under 11 U.S.C. § 523(a)(5).

A separate order will follow.

### # # #